IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

KATIE GERDIN,                          §
                                       §
            Plaintiff,                 §
                                       §
v.                                     §     CIVIL ACTION NO. H-11-3567
                                       §
CEVA FREIGHT, L.L.C. and               §
CEVA LOGISTICS U.S., INC.,             §
                                       §
            Defendants.                §

## MEMORANDUM OPINION AND ORDER

Plaintiff, Katie Gerdin, brings this action against defendants, CEVA Freight, L.L.C., and CEVA Logistics U.S., Inc. (CEVA), for employment discrimination based on gender and pregnancy in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. (Title VII), and Chapter 21 of the Texas Labor Code, and for violation of the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. (FMLA). Pending before the court is Defendants' CEVA Freight, LLC, and CEVA Logistics US, Inc's Motion for Summary Judgment (Docket Entry No. 14). For the reasons set forth below defendants' motion for summary judgment will be denied.

## I.  Standard of Review

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact, and the law entitles it to judgment. Fed. R. Civ. P. 56(c). Disputes about

material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2511 (1986). The Supreme Court has interpreted the plain language of Rule 56(c) to mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986). A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc), (quoting Celotex, 106 S.Ct. at 2553-2554 (emphasis in original)). "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." Id. If, however, the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. Id. (citing Celotex, 106 S.Ct. at 2553-2554). In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Products, Inc., 120 S.Ct. 2097, 2110 (2000). Factual controversies are to be resolved in favor of the nonmovant,

"but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Little, 37 F.3d at 1075.

## II.  Undisputed Facts

Plaintiff was hired by CEVA in September 2008 as an Administrative Assistant.[1]  Plaintiff worked in the Corporate Truckload Department for Jim Duff, Vice-President of Ground Operations.[2]  Plaintiff's job duties included timekeeping; assisting with human resource paperwork; scheduling leave, training, meetings, and conference calls; making travel arrangements, preparing expense reports; recording overhead payables; ordering office supplies; preparing reports; Sprint invoicing; and researching special projects as requested by department managers.[3]

In March of 2009 Duff left CEVA,[4] and plaintiff began reporting to Bob Livingston, Ground Products Director for the

---

[1]Defendants CEVA Freight, LLC and CEVA Logistics US, Inc.'s Motion for Summary Judgment ("Defendants' MSJ"), Docket Entry No. 14, p. 2; Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment ("Plaintiff's Opposition"), Docket Entry No. 15, p. 2.

[2]Defendants' MSJ, Docket Entry No. 14, p. 2; Plaintiff's Opposition, Docket Entry No. 15, p. 2.

[3]Defendants' MSJ, Docket Entry No. 14, p. 2; Plaintiff's Opposition, Docket Entry No. 15, pp. 3-4.

[4]Defendants' MSJ, Docket Entry No. 14, p. 2; Plaintiff's Opposition, Docket Entry No. 15, p. 2.  See also Plaintiff's Deposition, Exhibit A attached to Defendants' MSJ, Docket Entry No. 14, p. 56:13-16; Oral Deposition of Wendy Valdemar ("Valdemar Deposition"), Exhibit B attached to Defendants' MSJ, Docket Entry No. 14, p. 21:15-25.

Pick-Up & Delivery Department, and performed administrative duties for various other managers.[5] Following Duff's departure CEVA renamed the Corporate Truckload department as the "Domestic" department and reorganized by moving the Safety & Compliance Department to another division of the company.[6] This reorganization eliminated thirty employees.[7]

In the summer of 2009 plaintiff informed defendants that she was pregnant.[8]

In October 2009 Senior Vice-President Nelson Bettencourt transferred from the Corporate HR department to the Domestic department.[9] Bettencourt brought with him his long-time administrative assistant Margarita Rodriguez.[10] Before taking maternity leave plaintiff trained Rodriguez to perform some of plaintiff's duties so that Rodriguez could perform those duties while plaintiff was on leave.[11]

---

[5]Defendants' MSJ, Docket Entry No. 14, p. 3 (citing Valdemar Deposition, Exhibit B attached to Defendants' MSJ, Docket Entry No. 14, pp. 13 and 16); Plaintiff's Opposition, Docket Entry No. 15, p. 3 (citing Plaintiff's Deposition, Exhibit A to Defendants' MSJ, Docket Entry No. 14, p. 86:17-19).

[6]Defendants' MSJ, Docket Entry No. 14, p. 3 (citing Exhibit B, Valdemar Deposition, pp. 14, 49-50).

[7]Id. (citing Exhibit B, Valdemar Deposition, p. 49).

[8]Id. (citing Exhibit A, Plaintiff's Deposition, pp. 10-12).

[9]Id. (citing Exhibit D, Declaration of Stacey Harrison, ¶ 5).

[10]Id. (citing Exhibit B Valdemar Deposition, p. 42, and Exhibit C, Kilgore Deposition, p. 12).

[11]Id. (citing Exhibit A, Plaintiff's Deposition, p. 37, Exhibit B, Valedmar Deposition, pp. 17, 31-32).

On March 15, 2010, plaintiff took FMLA-covered maternity leave for the birth of her second child.[12] On May 24, 2010, plaintiff returned to work.[13] Plaintiff's job title remained the same, but plaintiff contends that her job duties changed, and that the only job duty returned to her was Sprint invoicing.[14] On June 9, 2010, CEVA terminated plaintiff's employment.[15]

### III. **Defendants' Motion for Summary Judgment**

Defendants argue that they are entitled to summary judgment because plaintiff is unable to present evidence in support of one or more of the essential elements of each of plaintiff's claims.

**A. Federal Law Claims**

1. Title VII

Plaintiff alleges that defendants terminated her employment because of her sex and her pregnancy in violation of rights protected by Title VII.[16] Defendants argue that they are entitled to summary judgment on plaintiff's Title VII claims because

---

[12]Id. (citing Plaintiff's Deposition, p. 37). See also Plaintiff's Opposition, Docket Entry No. 15, p. 3.

[13]Defendants' MSJ, Docket Entry No. 14, p. 4; Plaintiff's Opposition, Docket Entry No. 15, p. 4.

[14]Plaintiff's Deposition, Exhibit A to Defendants' MSJ, Docket Entry No. 14, pp. 122:7-123:6.

[15]Defendants' MSJ, Docket Entry No. 14, p. 5; Plaintiff's Opposition, Docket Entry No. 15, p. 4.

[16]Plaintiff's Amended Complaint, Docket Entry No. 13, pp. 3-5 ¶¶ 15-21.

plaintiff was discharged as part of a reduction-in-force (RIF), and because plaintiff has not presented any evidence that her discharge was a pretext for sex discrimination based on pregnancy.

(a)   Applicable Law

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., prohibits discrimination on the basis of race, color, religion, sex, or national origin in federal and private employment.  The Pregnancy Discrimination Act of 1978 (PDA) "amended Title VII by explicitly including discrimination based on pregnancy and related medical conditions within the definition of sex discrimination."  Stout v. Baxter Healthcare Corp., 282 F.3d 856, 859 (5th Cir. 2002).  Specifically, Title VII's definition of the terms "because of sex" and "on the basis of sex" was expanded to include "because of or on the basis of pregnancy, childbirth, or related medical conditions. . ."  Id. (quoting 42 U.S.C. § 2000e(k)).  A claim brought under the PDA is analyzed like any other Title VII discrimination claim. See Urbano v. Continental Airlines, Inc., 138 F.3d 204, 206 (5th Cir. 1998), cert. denied, 119 S.Ct. 894 (1999).

The evidentiary analysis required in cases brought under Title VII for sex discrimination was enunciated in McDonnell-Douglas Corp. v. Green, 93 S.Ct. 1817 (1973), and has been reaffirmed in many subsequent cases, including, e.g., St. Mary's Honor Center v. Hicks, 113 S.Ct. 2742 (1993). Under the McDonnell-Douglas procedure the initial burden of establishing a prima facie

-6-

case lies with the plaintiffs.  93 S.Ct. at 1824.  Once plaintiffs have established a prima facie case, a rebuttable presumption arises that obligates the defendant to articulate a legitimate, nondiscriminatory business reason for the challenged action.  If defendant articulates such a reason, the burden shifts to plaintiff to establish that the defendant's stated reason is pretextual and that the true reason is unlawful discrimination.  St. Mary's, 113 S.Ct. at 2747 (citing Texas Dept. of Community Affairs v. Burdine, 101 S.Ct. 1089, 1094-1095 (1981)).  Evidence of pretext will permit a trier of fact to infer that the discrimination was intentional. Nichols v. Loral Vought Systems Corp., 81 F.3d 38, 41 (5th Cir. 1996).  In the summary judgment setting, the plaintiff's burden is not to persuade the court that defendant's explanation is incorrect but, rather, to raise a genuine issue of material fact for trial by presenting evidence that both (1) rebuts the defendant's non-discriminatory reason, and (2) creates an inference that impermissible discrimination was a determinative factor in the challenged employment decision.  E.E.O.C. v. Texas Instruments Inc., 100 F.3d 1173, 1180-1181 (5th Cir. 1996).  The burden of producing evidence from which a rational trier-of-fact could find discrimination always remains with the plaintiff.  St. Mary's, 113 S.Ct. at 2747-2749.

(b)   Application of the Law to the Facts

### (1)   Plaintiff Has Established <u>Prima Facie</u> Case

To carry the initial burden on her claim of sex discrimination based on pregnancy, plaintiff must establish a <u>prima facie</u> case by showing that:  (1) she is a member of a protected group; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) that other similarly situated employees were more favorably treated, or that she was replaced by a person who was not a member of her protected class.  <u>See</u> <u>McDonnell-Douglas</u>, 93 S.Ct. at 1824.  <u>See also</u> <u>Urbano</u>, 138 F.3d at 206; <u>McCoy v. City of Shreveport</u>, 492 F.3d 551, 556 (5th Cir. 2007). Defendants do not dispute that plaintiff was qualified for her position or that she suffered an adverse employment action. Instead, asserting that plaintiff "was not pregnant when CEVA eliminated her position, having given birth approximately 10 weeks before and returned to work full-time,"[17] defendants argue that plaintiff is not a member of the class protected by the PDA. Defendants also argue that "[a]lthough [plaintiff] fits within a protected status for her gender discrimination claim, she offers no evidence that a similarly situated male was treated more favorably than her."[18]

Defendants do not dispute that plaintiff was discharged less than three weeks after she returned from her maternity leave, and

---

[17]Defendants' MSJ, Docket Entry No. 14, p. 11.

[18]<u>Id.</u>

-8-

that while plaintiff was out on maternity leave her job duties were reassigned to two women, Margarita Rodriguez and Wendy Valdemar, neither of whom were pregnant, and both of whom retained plaintiff's job duties after plaintiff's discharge.   These undisputed facts are sufficient to satisfy the disputed elements of plaintiff's prima facie case, i.e., that plaintiff was a member of the protected class of pregnant women, and that plaintiff was replaced by employees who were not members of her protected class, i.e., women who were not pregnant.   See McLaughlin v. W & T Offshore, Inc., 78 Fed.Appx. 334, 338 (5th Cir. 2003) (per curiam) (plaintiff established prima facie case under the PDA by showing that plaintiff was pregnant, she was discharged following return from maternity leave, and her duties were delegated to two non-pregnant employees).   See also Migis v. Pearle Vision, Inc., 135 F.3d 1041, 1060 (5th Cir. 1998) ("comparison is . . . between pregnant and nonpregnant workers, not between men and women").

### (2)   Genuine Issues of Fact Exist as to Pretext

Once plaintiff has established a prima facie case of sex discrimination based on pregnancy, the question becomes whether defendants have offered a legitimate, nondiscriminatory reason for the adverse employment action at issue, here plaintiff's discharge, and whether plaintiff can satisfy her burden of presenting evidence from which a reasonable fact-finder could conclude that the

-9-

defendants' stated reason for her discharge is not true but is, instead, a pretext for sex discrimination based on pregnancy.

>          (i)    Defendants' Legitimate Non-Discriminatory
>                 Business Reason for Plaintiff's Discharge

Defendants argue that they are entitled to summary judgment on plaintiff's Title VII claims because her position was eliminated as part of a RIF.  As evidence that plaintiff's position was eliminated as part of a RIF, defendants cite the deposition testimony of Wendy Valdemar, supervisor of the P&D Department, and Cathy Kilgore, who at all relevant times was Vice-President of Human Resources, and the declaration of Stacey Harrison, Human Resources Business Partner Manager for CEVA Freight, L.L.C.

Kilgore testified that in the fall of 2009 CEVA began a series of layoffs, that plaintiff was considered for layoff then, but another person was discharged instead.[19]  Kilgore testified that in early 2010 CEVA initiated plans to outsource certain functions that would result in the layoff of many employees who performed accounting functions in the Domestic department, but that plaintiff's supervisors were not advised of the outsourcing plan until early June of 2010.[20]

---

[19]Deposition of Cathy Kilgore, Exhibit C to Defendants' MSJ, Docket Entry No. 14, pp. 9-12.

[20]Id. at 13 and 29.

-10-

Valdemar testified that in January of 2010 she and plaintiff's supervisor, Bob Livingston, told plaintiff that she would be trained in line haul payable functions because she would be assuming those duties upon her return from maternity leave. Valdemar testified that later that month plaintiff moved to a cubicle to sit among the other line haul clerks and begin training in their duties.[21]  Valdemar also testified that on June 9, 2010, plaintiff has discharged as part of a RIF, that the RIF continued through the end of 2010, and that the RIF affected a significant number of employees in addition to plaintiff.[22]  Valdemar testified that CEVA selected plaintiff for the first part of the RIF because her skills were less necessary for the transition to outsourcing since she was still learning the line haul duties and could not assist in the transfer of information to the outsourcing entity.[23]

Harrison stated in her declaration that plaintiff was employed by CEVA Freight, L.L.C., not by CEVA Logistics U.S., Inc., that on October 11, 2009, CEVA transferred Senior Vice-President Nelson Bettencourt from the Corporate HR department to head the Domestic

---

[21]Deposition of Wendy Valdemar, Exhibit B to Defendants' MSJ, Docket Entry No. 13, pp. 19-32, 46, 53.

[22]Defendants' MSJ, Docket Entry No. 14, pp. 4-5 (citing Deposition of Wendy Valdemar, Exhibit B to Defendants' MSJ, Docket Entry No. 13, pp. 32-35).

[23]Id. at 5 (citing Deposition of Wendy Valdemar, Exhibit B to Defendants' MSJ, Docket Entry No. 13, pp. 44-45).

Department, and that Bettencourt's long-time administrative assistant, Margarita Rodriguez, worked for CEVA for approximately twelve years, from December 3, 1999, to March 30, 2012.[24]  Harrison also stated that

> CEVA instituted a reduction in force ("RIF") associated with outsourcing all accounting functions in the U.S., including the Domestic P&D Department.  Approximately 41 persons were terminated as part of the RIF during September and October 2010.  Later terminations as part of the RIF took the total layoffs to approximately 62 persons.[25]

Defendants' articulated reason for discharging the plaintiff is that plaintiff had been transferred to the P&D Department prior to her maternity leave, and that plaintiff was discharged on June 9, 2010, because her position was eliminated when P&D was outsourced.  If believed by the trier of fact, defendants' legitimate, non-discriminatory business reason for discharging plaintiff would support a finding that her discharge was not caused by unlawful discrimination.  See Texas Instruments, 100 F.3d at 1181 (recognizing a RIF as a legitimate, nondiscriminatory reason for discharge).

(ii)  Plaintiff's Evidence of Pretext

Where an employer produces a legitimate, non-discriminatory explanation, the plaintiff bears the ultimate burden of persuading

---

[24]Declaration of Stacey Harrison, Exhibit D to Defendants' MSJ, Docket Entry No. 14, ¶¶ 4-6.

[25]Id. ¶ 7.

-12-

the trier of fact that the defendant engaged in intentional discrimination.  Evidence showing that the defendants' explanation is false, taken together with the plaintiff's prima facie case is likely to support an inference of discrimination.  Laxton v. Gap, Inc., 333 F.3d 572, 578 (5th Cir. 2003).  Here, plaintiff presents several types of evidence to rebut defendants' claim that she was discharged because her position was eliminated in a RIF.

First, plaintiff points to the temporal proximity between her protected activity and her discharge, i.e., plaintiff was discharged less than three weeks after she returned from maternity leave.  Second, while defendants claim that the decision to discharge plaintiff was precipitated by the decision to outsource the P&D Department's accounting functions, plaintiff disputes the defendants' contentions that the duties she performed were outsourced accounting functions.  Plaintiff testified in her deposition that she never did much with the ladies in the P&D Department because they did billing while she performed other administrative duties such as timekeeping; assisting with human resource paperwork; scheduling leave, training, meetings, and conference calls; making travel arrangements; preparing expense reports; recording overhead payables; ordering office supplies; preparing reports; Sprint invoicing; and researching special projects as requested by department managers.[26]  Plaintiff argues

---

[26]Defendants' MSJ, Docket Entry No. 14, p. 2; Plaintiff's Opposition, Docket Entry No. 15, pp. 3-4.

that when she returned from maternity leave she was only given back one of her core duties:  Sprint invoicing.[27]  As evidence that all but one of her core duties was not returned to her when she returned from maternity leave, plaintiff points to her deposition testimony that during the two weeks she was employed after her maternity leave and before her discharge, she did Sprint invoicing and a special project for Valdemar that involved looking up items in a database.[28]  Moreover, defendants have not produced any evidence that the duties plaintiff performed prior to her maternity leave were ever outsourced either by the time of her discharge on June 9, 2010, or later.  Instead, the undisputed evidence shows that plaintiff's duties were assumed by Rodriguez and Valdemar:

> Q.   Who took over the duties of ordering supplies while Katie was on maternity leave?
>
> A.   Margarita.
>
> Q.   Who took over Katie's timekeeper duties while she was on maternity leave?
>
> A.   Margarita and myself.
>
> Q.   And do you know if anybody took over the things that Katie was doing to help the help desk and the managers with the website?
>
> A.   That came back to me.[29]

--------

[27]Plaintiff's Opposition, Docket Entry No. 15, p. 4 (citing Valdemar Deposition, Exhibit B to Defendants' MSJ, Docket Entry No. 14, p. 32:13-16).

[28]Plaintiff's Opposition, Docket Entry No. 15, p. 4 (citing Exhibit A to Defendants' MSJ, Plaintiff's Deposition, pp. 82:7-84:3).

[29]Exhibit B to Defendants' MSJ, Docket Entry No. 14, Valdemar Deposition, p. 27:3-19.

Third, defendants' human resources representative, Kilgore,
testified that when there is a RIF, defendants conduct a "peer
group analysis" to determine who to lay off, but that no such
analysis was ever done for plaintiff.  Kilgore also testified that
when a RIF is needed, every effort is made to reduce extra staff by
transferring and rebalancing individuals as appropriate, but that
she was not aware of any such efforts having been made for the
plaintiff.  Nor did Kilgore know whether any consideration had been
given to discharging any other administrative assistants, such as
Rodriguez.   Instead, Kilgore testified that Rodriguez was not
considered for the RIF.[30]

Finally, plaintiff points to comments made to her by her
supervisor, Livingston, both before and after her maternity leave.
Plaintiff testified that prior to her maternity leave, Livingston
expressed displeasure with her having to take time off work to go
to her prenatal doctor appointments, and questioned her as to how
long her appointments would take, and whether they could be made at
different times.[31]  Plaintiff testified that when she returned from
maternity leave, Livingston said to her:  "I hope that having kids
is not going to interfere with your ability to work full time,"[32]

---

[30]Exhibit C to Defendants' MSJ, Docket Entry No. 14, Kilgore
Deposition, pp. 17-18, and 22-23.

[31]Plaintiff's Opposition, Docket Entry No. 15, p. 4 (citing
Plaintiff's Deposition, Exhibit A to Defendants' MSJ, Docket Entry
No. 14, p. 39).

[32]Id. (citing Plaintiff's Deposition, Exhibit A to Defendants'
MSJ, Docket Entry No. 14, p. 71).

and he suggested to her that a part-time job might be better for her.[33]

The court concludes that when viewed in totality and in the light most favorable to the plaintiff, the evidence that plaintiff has presented is sufficient to create a genuine issue of material fact as to whether defendants' stated reason for her discharge is not true but is, instead, a pretext for sex discrimination based on pregnancy. While temporal proximity alone is insufficient at the pretext stage, see Strong v. University Healthcare System, L.L.C., 482 F.3d 802, 808 (5th Cir. 2007), and the "[f]ailure to follow internal procedures is generally not enough to create a genuine issue of fact as to discriminatory motives," Grubb v. Southwest Airlines, 296 Fed.Appx. 383, 390 (5th Cir. 2008), cert. denied, 129 S.Ct. 1986 (2009), temporal proximity coupled with evidence that the proffered reason is not true will suffice to survive summary judgment. See Schackelford v. Deloitte & Touche, LLP, 190 F.3d 398, 409 (5th Cir. 1999).

Although defendants cite evidence indicating that plaintiff's position was eliminated in a RIF, defendants' evidence shows that the RIF occurred in September and October of 2010, while plaintiff was discharged on June 9, 2010. In addition, the plaintiff appears to be the only employee discharged in June of 2010. The contradiction between defendants' evidence of when the RIF occurred and when plaintiff was discharged, in addition to plaintiff's position

---

[33]Id.

apparently being the only position eliminated in June 2010, taken together with the temporal proximity of plaintiff's discharge to her return from maternity leave, the defendants' failure to follow internal procedures, and her supervisor's remarks, raise credibility issues that are sufficient to create material issues of disputed fact as to whether defendants' articulated reason is true.  See Reeves, 120 S.Ct. at 2109 ("a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated"); Blow v. City of San Antonio, Tex., 236 F.3d 293, 297 (5th Cir. 2001) (recognizing that one is "simply not required to believe" defendants' proffered reason for plaintiff's discharge); Hunt v. Rapides Healthcare System, LLC, 277 F.3d 757, 762 (5th Cir. 2001) ("Credibility determinations are not part of the summary judgment analysis."); Palasota v. Haggar Clothing Co., 342 F.3d 569, 576 (5th Cir. 2003), cert. denied, 124 S.Ct. 1441 (2004) ("the establishment of a prima facie case and evidence casting doubt on the veracity of the employer's explanation is sufficient to find liability").  Accordingly, the court concludes that the evidence of pretext provided by plaintiff, in its totality, is sufficient to support a finding that summary judgment is unwarranted.

> 2.   The Family and Medical Leave Act

Plaintiff alleges that defendants willfully discriminated against her and interfered with her rights under the FMLA by

failing to return her job duties to her when she returned from FMLA-covered maternity leave, and by discharging her less than three weeks later.[34]   Defendants argue that they are entitled to summary judgment on plaintiff's FMLA claim because plaintiff has failed to state a prima facie case of interference with FMLA rights or retaliation for having exercised FMLA rights, and because plaintiff was discharged as part of a reduction-in-force (RIF).

      (a)  Applicable Law

The FMLA allows eligible employees working for covered employers to take temporary leave for medical reasons without risk of losing their employment. 29 U.S.C. § 2601(b)(1) and (2).[35]   The FMLA contains both prescriptive and proscriptive provisions which, together, seek both to accommodate the legitimate interests of employers and to meet the needs of employees and their families. See Hunt, 277 F.3d at 763. Prescriptive provisions of the FMLA allow an eligible employee to take up to twelve weeks of unpaid leave to care for herself if the employee suffers from a serious

---

[34]Plaintiff's Amended Complaint, Docket Entry No. 13, pp. 6-7 ¶¶ 24-27.

[35]The Act applies to private-sector employers with fifty or more employees. 29 U.S.C. § 2611(4)(A)(i). An employee who has worked for a covered employer for at least 1250 hours during the preceding twelve months is eligible for FMLA leave. 29 U.S.C. § 2611(2)(A). Defendants do not dispute either that CEVA is a covered employer or that plaintiff was eligible for FMLA leave.

health condition that makes the employee unable to perform the functions of her position, to care for a newly born or adopted child, and to care for a spouse, child, or parent who has a serious health condition.  Id. (citing 29 U.S.C. § 2612(a)(1)).[36]  If paid leave is available an eligible employee may elect, or an employer may require, the employee to substitute paid leave for unpaid FMLA leave.  29 U.S.C. § 2612(2)(A).  At the conclusion of a qualified leave period the employee is entitled to reinstatement to her former position, or to an equivalent one, with the same terms and benefits.  29 U.S.C. § 2614(a).  An equivalent position, for purposes of the FMLA, is one that is

> virtually identical to the employee's former position in terms of pay, benefits, and working conditions, including privileges, prerequisites, and status.  It must involve the same or substantially similar duties and responsibilities which must entail substantially equivalent skill, effort, responsibility, and authority.

29 C.F.R. § 825.215(a).  Proscriptive provisions of the FMLA make it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the FMLA.  29 U.S.C. § 2615(a).  The FMLA provides a private

---

[36]29 U.S.C. § 2612(a)(1) provides in relevant part that

[A]n eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for one or more of the following:

(A) Because of the birth of a son or daughter of the employee and in order to care for such son or daughter.

right of action against employers who violate its provisions.   29 U.S.C. § 2617.

(b)   Application of the Law to the Facts

Plaintiff alleges that she was unlawfully terminated in retaliation for taking FMLA leave following the birth of her second child.   See 29 C.F.R. § 825.220(c).   As with Title VII claims, the McDonnell-Douglas framework applies to those plaintiffs who can state a prima facie case of retaliation.   Hunt, 277 F.3d at 757. For the reasons stated in § III.A.1, above, the court concludes that plaintiff has raised a genuine issue of material fact for trial as to whether defendants discharged her in retaliation for having taken maternity leave.   For the reasons stated below, the court also concludes that plaintiff has raised a genuine issue of material fact for trial as to whether defendants violated the FMLA by failing to return plaintiff to an equivalent position following her maternity leave.

The undisputed evidence is that plaintiff's job duties still existed within the company during and after her maternity leave, but that they were given primarily to Rodriguez, with some being shared among other employees, including Wendy Valdemar who testified, for example, that:

Q.   Who took over the overhead payables during the time that Katie was on maternity leave?

A.   That was absorbed back into my accounting group.

-20-

Q.    Who took over those duties within your accounting
      group?

A.    Multiple people.  Whoever was available.

Q.    Who took over the duties of ordering supplies while
      Katie was on maternity leave?

A.    Margarita.

Q.    Who took over Katie's timekeeper duties while she
      was on maternity leave?

A.    Margarita and myself.

Q.    And do you know if anybody took over the things
      that Katie was doing to help the help desk and the
      managers with the website?

A.    That came back to me.[37]

Because defendants have failed to present any evidence showing that
these duties were returned to plaintiff following her maternity
leave, the court concludes that plaintiff has raised a genuine
issue of material fact for trial that precludes granting the
defendants' motion for summary judgment on her FMLA claims.

## B.    Plaintiff's TCHRA Claims

Plaintiff alleges that defendants terminated her employment in
violation of rights protected by the TCHRA.[38] Like Title VII, the
TCHRA makes it unlawful for an employer to discharge and/or
discriminate against an individual because of such individual's

---

[37]See Deposition of Wendy Valdemar, Exhibit B to Defendants'
MSJ, Docket Entry No. 14, p. 27:3-19.

[38]Plaintiff's Amended Complaint, Docket Entry No. 13, pp. 5-6
¶¶ 22-23.

age.  Tex. Lab. Code §§ 21.051(1), 21.106(a).  Because the TCHRA
executes Title VII policies, claims brought under the TCHRA are
analyzed in the same way as cases brought under Title VII.  Pineda
v. United Parcel Services, Inc., 360 F.3d 483, 487 (5th Cir. 2004).
Defendants argue that they are entitled to summary judgment on
plaintiff's TCHRA claims because plaintiff has no evidence that her
gender and/or her pregnancy played any role in either the decision
to change her responsibilities prior to her maternity leave or the
decision to discharge her weeks after she returned from her
maternity leave.  Defendants also argue that plaintiff cannot rebut
any of their legitimate, nondiscriminatory reasons for the employ-
ment actions taken against her.  For the reasons explained above
with respect to plaintiff's Title VII claims, the court concludes
that genuine issues of material fact preclude granting defendants'
motion for summary judgment on plaintiff's TCHRA claims for
employment discrimination.

## IV.  Conclusions and Order

For the reasons explained above, the court concludes that
plaintiff has raised genuine issues of material fact for trial as
to whether defendants discharged her because of her pregnancy in
violation of Title VII of the Civil Rights Act of 1964, as amended,
42 U.S.C. § 2000e et seq. (Title VII), and Chapter 21 of the Texas
Labor Code, and violation of the Family and Medical Leave Act, 29
U.S.C. § 2601 et seq. (FMLA).  Accordingly, Defendants' CEVA

-22-

Freight, LLC, and CEVA Logistics US, Inc's Motion for Summary Judgment (Docket Entry No. 14) is **DENIED.**

    **SIGNED** at Houston, Texas, on this 8th day of November, 2012.

                                              SIM LAKE
                         UNITED STATES DISTRICT JUDGE